Mr. Harrington, whenever you're ready, you may proceed. Thank you, Your Honor, and may it please the Court. First of all, can everyone hear me okay? Yes, we can hear you just fine. Thank you. Yes, thank you, Counsel. Counsel, I would appreciate it if you'd speak up a little bit because I can't turn on my speaker phone to make it louder. All right, I've moved the speaker phone on my end closer. My name is Matthew Harrington on behalf of the appellants, and may it please the Court. In this appeal, plaintiffs Phillip Fowler and Jeffrey Swans asked this Court to reverse the district court's grant of summary judgment to defend an OSP prevention group, finding that plaintiffs were exempt from the Fair Labor Standards Act's maximum hours provisions under the administrative exemption, and to grant partial summary judgment to the plaintiffs as to the same exemption. The district court made three fundamental errors in its summary judgment order. Each of those errors is dispositive of the exemption, and each independently demands that its order be reversed and that summary judgment be entered in favor of the plaintiffs. The first error, it misinterpreted the meaning of general business operations to include work that is entirely production work rather than supporting administrative work. Second, it misunderstood the meaning of discretion and independent judgment to improperly include decisions about the minutiae of an employee's everyday job duties. And third, it failed to connect any exercise of discretion and judgment to the required matters of significance within the meaning of the administrative exemption. In fact, the district court seemed to have forgotten that this third requirement existed at all. To recap only the most basic facts of this case, my clients were property damage investigators, or PDIs, for defendant OSP. Their primary job function was to prepare investigative reports when a third party would damage Comcast's property, most typically through- This is Robin Rosenbaum. I was just wondering, I have a couple of questions. My first question is, is it possible that Mr. Fowler and Mr. Swans fall into two different categories here? I note that I think it was Mr. Fowler who actually helped prepare the damage investigators manual, wrote the instructions. I don't know if that takes them out of the same category that Mr. Swans would be in, or maybe doesn't. And the second question I have is, is there a material issue of fact here with respect to whether the matters of significance that they were involved in were of the type that would fall into the exempted category or not? That is, whether the majority of what they did would fall into the category of exemption or not. Your Honor, there are a lot of contentions about the exact nature of the plaintiff's job duties in the defendant's brief. As I attempted to argue in our reply, they're not factually supported. If we took their allegations at face value, then yes, there would be a material dispute. But once you actually look at the record, they sort of disappear. As to whether they fall into two separate categories, I would say that it's certainly theoretically possible, because every employee is entitled to have their actual job duties evaluated. And where two employees have different job duties, they can. One can be exempt while the other is not. But here, there is not enough in the record to demonstrate that the duties that Mr. Fowler had in assisting with drafting the manual constituted a primary duty for one thing, and second, how extensive his assistance was. We simply don't know. We know he wasn't in charge of drafting the manual, and the record is simply insufficient to show that his involvement in that drafting rose to the level of exercising discretion and judgment or interpreting policies. So Counsel, doesn't that feed into Judge Rosenbaum's second question, which is there may be a genuine issue of material fact on that aspect, as per Fowler? No, Your Honor, because the defendants had the burden on summary judgment of proving the applicability of the exemption, and they did not elicit facts that created the material issue. The silence on that issue means that summary judgment should have been entered in favor of plaintiffs on that issue. So to go back, I do want to focus today primarily on the issue of general business operations rather than the discretion and independent judgment and matters of significance issues, simply because those other issues are so fact-intensive and we have such limited time today. Each of these issues is dispositive, and the general business operations issue is one that this Court can decide very easily with undisputed facts on very clear case law. On its face, the phrase general business operations is somewhat ambiguous. However, read in conjunction with the Department of Labor's longstanding regulations, decades' worth of DOL opinion letters, and numerous federal appeals court decisions, that ambiguity vanishes. It is clear that general business operations, as applied to the administrative exemption, means assisting with running or servicing of the business, and they're exemplified by examples given at 29 .201, such as accounting, budgeting, purchasing, and public relations. What each of these functional areas have in common is that they are not revenue-generating activities. Instead, they support revenue-generating activities. And I would point the Court to the Fourth Circuit's fairly recent decision in Calderon v. Geico, where they concluded that private sector investigators' primary duty of conducting factual investigations and reporting the results is, quote, not analogous to the work in the functional areas that the regulations identify. They continue to note that, however, it is directly analogous to the work of public sector investigation work that the regulations identify as not satisfying the directly related element. So we have case law from several different circuits and literally decades of DOL opinion letters, as well as a regulation directly on point saying that fact-finding and investigative work are not administrative duties when applied to an employer whose entire business function is to conduct investigations. And it doesn't affect your case, but except perhaps where the investigators have authority to settle cases? Yes, Your Honor, exactly. When investigators have been found to be exempt in a few cases out there, and we have problems with some of the reasoning in those cases, but for present purposes, the important thing to note is that they had additional duties, and that distinguishes them from our plaintiffs in this case. It was those additional duties that made those investigators exempt if they were, in fact, exempt, not their investigative duties themselves. It was things like being able to settle cases, being able to recommend or make decisions about termination of employees or other decisions that go towards the employer's or the employer's customers' business organizational decisions. And something that seems to have been forgotten in the district court was that it's not just an analysis of what the employee does. It is what the employee does with respect to a specific employer. And you have to analyze both parts. Otherwise, you risk mistaking production work for administrative work. For example, if Comcast had been pursuing damagers in-house, that very well could have been administrative work with respect to Comcast. But that work wasn't done in-house. It was farmed out to OSP that acted like a collection agency. And those investigations were the product that OSP exists to create and to sell. They build our clients out by the hour to the damagers and invoice them for our clients' time. They fall squarely on the production side. And as virtually every court to have addressed the issue has concluded, when work falls squarely on the production side, it is not... Counsel, your time has expired. Thank you. It is not administrative. Thank you. All right. Thank you, Counsel. You have reserved five minutes for rebuttal. And we will hear from Attorney Mitchell. Good morning, Your Honors. May it please the Court, Wright Mitchell here on behalf of OSP Prevention Group. And the first thing I'd like to address is this notion that the PDIs are production employees. That is simply not the case. Production employees and the production administrative production dichotomy analysis is not particularly instructive in the service industry. But even if it were, OSP is a damage administration service company. So it performs not only damage investigations. It also prepares subrogation packages and then attempts to recover on behalf of the aggrieved party from the liable party. So damage investigations are just one of three different core functions that OSP performs. And the damage investigators support the damage investigation component of OSP's business. So they are not... OSP does not simply produce... Counsel, how's that any different from a plaintiff puts the bumpers on the car and somebody else puts the engine in and somebody else worries about the windshield, the painting, and all that kind of stuff. They are contributing to the product that OSP sells. Well, Your Honor, I would disagree respectfully that OSP sells investigative services. If that were the case, then I would agree with you. I thought they hired out at so much an hour their employees to perform investigation. Am I wrong about that? The damage investigators, Your Honor, are employees of OSP. Right. That's what I'm talking about. And OSP says we'll charge you X dollars an hour for each hour that our investigators spend on it. And then we're going to charge you for other amounts. But that's part of what we're selling you is the service of doing the investigation. Am I wrong about that? It is part... That's correct, Your Honor. It is part of what they sell, but it's not the only thing that they sell. Well, a bumper is part of what a car manufacturer sells. Well, respectfully, Your Honor, I disagree with the car analysis. Could you tell me why? Well, because this is a multifaceted... Producing a car is a single object, right? And there's a production line of people performing... It's a single object, but as I understand it, thousands of parts that are worked on by different people on the assembly line and different robots. Well, that is correct, Your Honor. But at the end of the day, what GM produces is a car. What OSP produces is a service that's offered to broadband cable companies that allows them to recover or damage cable property. So it's very different. So in other words, the service that OSP is offering is not a damage investigation. The service that OSP is offering is a damage recovery service. So not only do they... But isn't a necessary part of that service the investigation that goes on that the PDI is engaged in? Of course it is, yes. Absolutely. And there are cases, Your Honors, that have already addressed this issue. I would point you to the South V. Smollard case, which is decided in the Northern District of Georgia. That case involved a... It was an investigator for a law firm. And that investigator went out, and his job duties involved determining the investigative view of the case. He supervised outside contractors and witnesses, took photographs, collected evidence, negotiated the purchase of defective parts and vehicles for preservation. And all of that was used in support of insurance companies attempts to settle insurance disputes. So what the PDIs in this case are doing is akin to the investigator in Stout. And there's another case, Your Honors, that you can look to that was decided by the Northern District of Georgia in 2017 by Judge Cohen Bynum v. Clayton County Public School System. In that case it was an investigator for the Clayton County School System that would go in if there was an alleged crime that had happened on a school campus. They would identify witnesses, interview witnesses, follow up on any leads, collect evidence, review and analyze all the information collected, make a determination whether a crime had been committed. So what the PDIs in this case are doing, Your Honors, is simply supporting OSP's general business operations. And I would also note that the regulation, the relevant regulation, says it doesn't just have to be OSP's business operations that the PDI is supporting. It is also it is also could be supporting the business operations of the employer's customers, which in this case- Go ahead. Let me- the thing I'm having a little trouble with is determining what your position would mean for the service industry generally. Give us an example of a service provider whose employees wouldn't necessarily be administrative employees under your position. In a service industry? Yeah, that provides service to outside entities and companies. Well, you know, again, I'm not sure that there's a better analogy than exactly what we're talking about. That doesn't work. I'm sorry. That doesn't work. I'm asking you give us an example of a service provider whose employees would be- would not be administrative employees. They have outside- the company has outside clients, and it sells services to those clients. Is every single employee of that client, other than somebody who answers the switchboard, are they all administrative employees? No, of course not. What's the difference between these guys who go out and provide the service of getting the information, the dig reports, the photographs, interviewing people? That's a service. What kind of service could someone do that wouldn't be administrative employee category under your analysis? Well, Your Honor, you know, I think that if we look at- simply look at claims adjusters for an insurance company. Claims adjusters for an insurance company under the regulations are generally considered to be exempt employees. You're not giving me an example of somebody who wouldn't be an exempt employee. Who wouldn't be? Who provides service, who works for a company that is predominantly a service company. They don't sell widgets. They don't sell cars. They provide services to people who sign up and need the services. Give me an example of somebody who works in providing that service for that service-providing company who's not an exempt employee under your position. Well, Your Honor, for example, let's say the service provided is event planning, right? They're going to be people who provide services to plan events, right? And they're going to be people who simply deliver the props and whatever that stage the event, right? But then they're going to also be people who actually plan the event. And they're going to be people who make the decisions and exercise the discretion necessary to come up with the creative ideas that the underlying employees implement. I think that the court respectfully is focusing on a very narrow view of what the damage investigators here are perceived to do when at the end of the day, they are simply like any other part of a company that provides services. They are supporting the underlying business operations of OSP. If OSP simply provided damage investigations, then I would agree with you there's an issue there. But that is not the case. I want to also talk about the issue of independent discretion and judgment. And in this case, the damage investigators performed a wide range of exempt and not. They did perform a variety of non-exempt type of job duties such as gathering facts. But there's a difference between gathering facts and making determinations. And in cases cited by opposing counsel, the California case and the Minnesota case, in cases where they found that people performing investigations, damage investigations specifically, do not exercise a requisite independent discretion and judgment, those investigators did not have the ability to make recommendations. So they were simply gathering facts. Why isn't there a genuine issue of material fact as to whether either or both of the plaintiff's duties, primary duties, was the performance of work directly related to the management of business operations of their employer? Well, Your Honor, because the business operations of the manager's employer here are damage administration services, which are investigative services, subrogation services, and recovery services. They are simply employees who support the investigative component of the business. So I don't think there are plenty of cases out there that the court can look to that we've cited in our briefs where other courts have analyzed this issue and found that people performing, employees performing investigative type job activities in the context of a damage recovery company are performing... The reason I ask is because you have conceded that there are certainly at least some aspects of the plaintiff's work that would not fall into the category of administrative services. And so it's pretty important here what their primary duties were and what category they fall into. Why is that a material issue of fact? Well, it's not because both plaintiffs have admitted that their primary job duty under oath was to conduct damage investigations and determine liability. So there's no material issue of fact because they have both testified that their primary duty was to conduct damage investigations to arrive at a liability determination. So that's the end of the story. Ball game. Two minutes remaining. So I think you need look no further than that. Simple testimony on its face that it doesn't matter. The amount of time they spend performing non-exempt job duties is irrelevant if their performance of exempt administrative job duties. So, counsel, then getting back to my original question to your colleague, with respect to Mr. Fowler who participated in drafting the damage investigators manual, what are we to make of that? I think what you've just said is that we don't consider that at all. No, I don't think we consider because ultimately the damage investigation manual was simply a guide. They were not bound by the guide. They were not required to follow the guide. They could deviate from the guide. The fact that Fowler participated in drafting the guide distinguishes him only from the standpoint that he exercised an additional level of discretion and judgment that Fowlers may not have. But it doesn't go to the seminal issue here, which is whether they exercised matters of discretion and judgment related to conducting damage investigations. I do not think there's a distinction between Fowler and Swans. Okay, thank you. Judge Rosenbaum, I know we're running short of time, but if I could, I want to follow up with one point of what counsel said. Of course. You said if OSP simply provided damage investigations, then arguably you'd have a weaker case. Absolutely. No question. That's absolutely correct. That is or isn't absolutely correct. If all they did was outsource  I think our case would be weaker. Tell me why. I'm struggling with service versus widgets. Sure. Tell me why that might be different. I would note, Your Honor, that's exactly why people the production there was a whole lot of cases years ago where originally it was helpful in a manufacturing setting, but that analysis the production administrative analysis is largely disfavored because it just doesn't fit into a service context, which courts have noted. It's not a very Counsel, you sound like you're floundering to me. I'm saying you said it might well be different. You don't have that case. You're giving away your client's case. My question is, why might it be different? The only thing these guys do, putting aside the manual possibility wrinkle as to Fowler, the only thing these guys do is damage investigations. Why might the legal effect and result be different if all that OSP did was farm out damage investigations? Because, Your Honor, take your car analogy, it would be akin to them producing a car. They would be producing damage investigations. In other words, that's the only thing that they produce, but in this case Well, actually, in my example, it would be akin to OSP selling bumpers alone. If you had somebody who just made bumpers and OSP just sold bumpers, they're not administrative employees, but you say if they sell the whole car, they are. I don't understand if the work that these plaintiffs do is the same in both our examples, in the case and in the hypothetical. And they don't do anything different vis-a-vis the corporation, the company. I don't understand why that makes them administrative employees. They're still out there taking pictures, reading big reports, interviewing people. Well, but they're also making liability determinations. It's different than putting a bumper on a car where it can be done by a robot. You're going, I think, to the discretion part, as opposed to whether it's directly related to the general business operations. You read the exercise of discretion as automatically meaning it's part of the general business operations, I take it. I do. Yes. I mean, it is a case where I think you have to look at it from the standpoint of there are three separate and distinct business operations that OSP performs, which are damage investigations, subrogation package preparation, and then recovery services. So damage investigations is a general business operation of OSP is your position. Correct. It is. I understand your position there. All right. Thank you, Counsel. And we will hear again from Mr. Harrington. Thank you, Your Honor. I'd like to follow up with just a few points. Following the defendant's logic, OSP would have no production employees at all, and everyone could be an exempt administrative employee simply because they work in tandem. Three different departments work in tandem. I would ask if this is really tenable, where you can distinguish different components of an employer's business that all have input into the final product that no production ever actually occurs. I don't think that's tenable. Second, we really don't need to argue about what type of business OSP is or what kind of services they provide because we have a copy of the contract with Comcast. I'm at District Court docket 64-1, page 34. This is exhibit A to the contract. It's called Services, and it says, Contractor provides outside plant damage recovery services to Company Central Division. Contractor services include plant damage investigation, identification of the damaging property, and loss recovery. It then goes on to enumerate all the different things that need to go into investigative reports. The investigation includes, but is not limited to, identifying the responsible party, interviews, photographs, review the locate service documentation. It goes on and on. There's no question that this is the service that they were hired to perform for Comcast because the section of their contract labeled services describes it in detail. The third point I'd like to make is opposing counsel's arguments about being able to deviate from the guide. No ability to deviate from the manual was ever identified other than you can change the order you want to do it in. You can make superficial and meaningless changes to how you mark up a photograph or you can not go pull a dig ticket if it's an aerial damage where a truck pulled down a cable from the air. Of course you're not going to pull a dig ticket because there was no way to do that. One of their arguments was that also these plaintiffs could recommend that a claim be abandoned and that's an exercise of independent judgment. Yes, and as we noted in our brief, we don't believe that saying I don't know constitutes discretion. I believe in deposition the example was given of a hit and run on the boxes that they called dog houses. If the police don't know who did it, they get the police report. If there's no one identified as the damaging party, it's over. They say we don't know. We'd like to abandon this. Is that the only time they ever recommend to abandon a claim? It is the only time that defendants identified as an exercise of that level of any discretion other than I believe the time that a squirrel broke a facility of some sort and I suppose then there was probably a recommendation that they abandon it and not sue the squirrel. Defendants have admitted multiple times that if a thousand different property damage investigators were sent out on a case, they should all come back with the exact same result. Your Honor, we respectfully submit that that admission does not allow for any meaningful exercise of discretion and independent judgment, even if it weren't production work, which it clearly is. I'm happy to take questions, but otherwise I'll see the rest of my time. All right. Thank you very much, counsel. That brings us to...